UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL GARRISON,

        Plaintiff,                    CIVIL ACTION NO. 06-CV-13258-DT

vs.

                                       DISTRICT JUDGE NANCY G. EDMUNDS

BETH DAVIS, et al.,            MAGISTRATE JUDGE MONA K. MAJZOUB

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

**I.** **RECOMMENDATION:** The Motion for Summary Judgment filed by Defendants Hughes and Culberson (docket no. 75) should be **GRANTED.**

Plaintiff's Cross Motion for Summary Judgment (docket no. 82) should be **DENIED** as to Defendants Hughes and Culberson.

**II.** **REPORT:**

This matter comes before the Court on the Motion for Summary Judgment filed by Defendants Hughes and Culberson. (Docket no. 75). Plaintiff has not responded to the motion but filed a Motion for Summary Judgment himself which includes an affidavit. (Docket no. 82). All pretrial matters have been referred to the undersigned for decision. (Docket no. 26). These motions are now ready for ruling pursuant to 28 U.S.C. § 636(b)(1)(B). The Court dispenses with oral argument pursuant to E.D. Mich. LR 7.1(e).

-1-

**A.     Facts**

This is a civil rights action filed by a state prisoner pursuant to 42 U.S.C. §§ 1983 and 1985. (Docket no. 45 at 8). Plaintiff alleges that on March 23, 2006 Defendant Kelly Hughes held an administrative hearing concerning mail sent to Plaintiff which was rejected by a prison mailroom employee. (*Id*. at 7). Plaintiff describes Defendant Hughes as the assistant resident unit manager at Mid-Michigan Correctional Facility. (*Id*. at 1). Defendant Hughes allegedly found that the rejected mail was properly rejected under the Department of Corrections policy. (*Id*. at 7). The rejected mail was several photocopied pages of a Central Michigan University student address directory. (*Id*. at 6-7).

Plaintiff describes Defendant Culberson as the resident unit manager at Saginaw Correctional Facility. (*Id*. at 1). He alleges that Defendant Culberson held a mail rejection hearing on January 3, 2006 at Saginaw Correctional Facility regarding a separate mail rejection in which two items were withheld from him. (*Id*. at 8). The items rejected were an internet news article describing the celebrity singer R. Kelly being charged with a sex crime and a few photocopied pages of the Central Michigan University student address directory. (*Id*.).

**B.     Claims**

Plaintiff claims in Count III of his Amended Complaint[1] that Defendants "have violated and or condoned the violation of the Plaintiff's First Amendment rights under the United States Constitution without any legitimate penological interest." (Docket no. 45 at 9). Plaintiff seeks declaratory and injunctive relief and damages. (*Id*. at 9-10).

---

[1] Defendants Hughes and Culberson are not named in the remaining counts of Plaintiff's Amended Complaint. (Docket no. 45 at 9).

**C.      Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. (*Id.*). A mere scintilla of evidence is insufficient to defeat a supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**D.      Analysis**

      **1.      Absolute Immunity**

Defendants argue that they are entitled to absolute immunity in their role as hearing officers at Plaintiff's mail rejection hearings. (Docket no. 75 at 8). Absolute immunity is accorded to those hearing officers designated as such and meeting the standards set out under Michigan state law. *See* Mich. Comp. Laws § 791.251-255; *Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). Courts have drawn a distinction between these professional hearing officers and MDOC employees who conduct hearings on matters such as whether to allow receipt of certain personal property. *See Garrison v. Dutcher*, 2008 WL 4534102 (W.D. Mich. Aug. 14, 2008). Employees who hold positions at the prison and who conduct hearings but are not professional hearing officers under the statutory framework are not accorded absolute

immunity. (*Id*.). Defendants fail to provide any evidence that they are in fact professional hearing officers entitled to absolute immunity. Plaintiff describes them as being prison employees, particularly unit managers, which suggests that they are not in fact professional hearing officers. (Docket no. 45 at 1; docket no. 82). Accordingly, Defendants' argument that they are entitled to absolute immunity must be rejected.

### 2.    **First Amendment Violations**

Defendants also argue that the mail rejections did not violate Plaintiff's First Amendment rights because the policies pursuant to which the mail was rejected are reasonably related to legitimate penological objectives. (Docket no. 75 at 8-15). In the earlier Report and Recommendation addressing the motion for summary judgment filed by Defendants Jerome and Scott-Hogan, this Court found that those defendants did not violate Plaintiff's First Amendment rights by rejecting the pages of the student directory. (Docket no. 53 at 6). The rejection of the news article was not at issue in that motion. Defendants in this action adopt and incorporate the arguments of Defendants Jerome and Scott-Hogan in this motion.[2] (Docket no. 75 at 14).

The standard for determining whether Defendants violated Plaintiff's First Amendment rights is whether the policy or regulation pursuant to which the mail was rejected is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Pursuant to prison policy prisoners are prohibited from receiving mail "if it is a threat to the security, good order, or discipline of the facility." MDOC Policy Directive 05.03.118(D). Courts generally afford great deference to prison polices relating to the preservation of the security and good order of the prison

---

[2] The Court therefore finds it appropriate to rely on materials filed in support of the previous motion in deciding this motion.

facility. *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) (setting out four-factor test of *Turner*).

The MDOC considers public telephone books to be a threat to the security and good order of the facility because they may contain personal information of prison employees and lead to threats and harassment against prison employees. (Docket no. 36, exs. C, D). The Court finds this to be a legitimate penological interest. *Thornburgh v. Abbott*, 490 U.S. 401, 415 (1989) (prison security is central to all other correctional goals). In addition, the prohibition of an inmate's receipt of directories such as a phone book, which may contain both addresses and phone numbers, is reasonably related to this legitimate interest. It would not be practical to require prison officials to inspect every directory to determine if in fact the directory at issue contains information about an employee. Finally, Defendants acted reasonably in applying this policy to Plaintiff's receipt of the information in the student directory. Whether or not the pages of the directory at issue contain only addresses or addresses and phone numbers, Defendants reasonably construed it to be a violation of the above policy for Plaintiff to receive and possess this information. It was not unreasonable for Defendants to conclude that the pages at issue might contain information about prison employees or their family members.[3] Accordingly, Defendants' rejection of the pages of the student directory did not violate Plaintiff's First Amendment rights. *See Turner*, 482 U.S. 78; *Harbin-Bey*, 420 F.3d at 578.

---

[3] In *Barber*, 496 F.3d at 451, the court discussed examples of the prisoners' harassment of correctional officers' family members after prisoners obtained personal information of officers. The harassment took the form of prisoners calling the officers' children by name, describing accurately the officers' children to the officers, and having accomplices outside of prison take photos of officers' houses and cars which were then mailed to prisoners. Therefore, there is a legitimate interest in rejecting information which might include contact information of the officer and the officers' family.

The other mail rejection that Plaintiff complains of is the rejection of a copy of the internet news article of the celebrity singer being charged with a sex offense against a minor. (Docket no. 45 at 8). Defendants argue that it is reasonable for them to prohibit mail describing sexual acts involving minors.[4] The policy at issue, PD 05.03.118(HH)(6) (docket no. 36 ex. C), prohibits a prisoner from receiving mail describing sexual acts involving children. The policy is designed to diffuse the sexually charged environment of prison which is not conducive to maintaining a secure prison setting. (Docket no. 75 at 14). This is a legitimate penological objective. *See Thornburgh*, 490 U.S. at 415. Moreover, it is especially appropriate for prison officials to strictly construe this regulation against Plaintiff who has been convicted of two charges of third degree criminal sexual conduct involving victims aged 13-15. (Docket no. 36 ex E). In his affidavit, Plaintiff states that the news article revealed that the singer had been charged with a sex crime but did not describe the act. (Docket no. 82 at 13). Because "great deference" is to be given to prison policies and practices relating to the preservation of security, good order, and discipline in the prison, the fact that the article may not have given details of the act does not transform the rejection of the article into an unreasonable application of the policy. *See Harbin-Bey*, 420 F.3d at 578. Accordingly, this policy which resulted in the rejection of the internet news article does not violate Plaintiff's First Amendment rights. *See Turner*, 482 U.S. 78.

---

[4] Whether or not this particular article, a copy of which has not been supplied to the Court, identified the alleged victim as a minor, the Court takes judicial notice that it was widely reported that the victim was a 13-year-old female. *See* Fed. R. Evid. 201; http://www.chicagotribune.com/topic/entertainment/music/popular-music/r.-kelly-PECLB004209.topic ("The charges, which were later reduced, stemmed from a video tape allegedly showing Kelly having sex with a 13-year-old girl.").

### III. NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: April 23, 2009                         s/ Mona K. Majzoub
                                              MONA K. MAJZOUB
                                              UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

     I hereby certify that a copy of this Report and Recommendation was served upon Michael Garrison and Counsel of Record on this date.

Dated: April 23, 2009                      s/ Lisa C. Bartlett
                                                            Courtroom Deputy